UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TAYFUN CALISKAN,

    Petitioner,

v.

DORA CASTRO, Warden, Otero County
Processing Center; MARY DE ANDA-
YBARRA, Field Office Director, El Paso
Field Office; TODD M. LYONS, Acting
Director of ICE, KRISTI NOEM, Secretary,
U.S. Department of Homeland Security;
PAMELA BONDI, Attorney General of the
United States,

    Respondents.

Case No. 2:26-cv-00414-DHU-GJF

**ORDER GRANTING PETITIONER'S MOTION FOR A
TEMPORARY RESTRAINING ORDER**

THIS MATTER is before the Court on Petitioner's Emergency Motion for a Temporary Restraining Order ("TRO"). Doc. 4. For the reasons set forth below, Petitioner's request for a temporary restraining order is **GRANTED**.[1]

**I.
PROCEDURAL BACKGROUND**

On May 15, 2025, an Immigration Judge ("IJ") ordered Petitioner removed from the United States but granted withholding of removal from his home country of Turkey. Doc. 3 at ¶¶ 4, 29.

---

[1] Under Fed. R. Civ. P. 65(b)(1), the Court may only issue a temporary restraining order without notice to the adverse party if the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Petitioner's attorney submitted only a TRO Info Sheet indicating that Respondents were served electronically by the Clerk of Court. Doc. 6. The Court finds this sufficient, as Respondents have been served in this matter and were notified of the motion through the Court's electronic filing system. *See* Doc. 5.

1

Petitioner has been detained since that date and remains in the custody of Immigration and Customs Enforcement ("ICE") at the Otero County Processing Center. *Id.* at ¶¶ 7, 33.

On February 17, 2026, Petitioner filed a verified Petition for Writ of Habeas Corpus ("Petition") with this Court. In the Petition, Petitioner seeks immediate release from immigration custody, *id.* at 12, alleging that his prolonged detention violates the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act ("INA), *id.* at ¶¶ 51-70. Specifically, Petitioner argues that his detention is no longer authorized by 8 U.S.C. § 1231, which governs post-removal order detention, because his removal to a third country is not reasonably foreseeable. *Id.* at ¶¶ 66-70 (citing *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001)). Moreover, Petitioner alleges that because he has been detained well beyond the presumptively reasonable six-month period established by the Supreme Court in *Zadvydas*, 533 U.S. at 701, his continued detention violates his due process rights. *Id.* at ¶¶ 51-60. Accordingly, Petitioner contends he should be released from detention or, alternatively, receive a constitutionally adequate bond hearing. *Id.* at ¶ 60.

Respondents were served with the Petition on February 17, 2026, Doc. 5, and that same day, this Court ordered the Government to show cause why the Petition should not be granted within ten business days of service, Doc. 8.

Also on February 17, 2026, Petitioner filed a Motion for a Temporary Restraining Order, asking this Court to order Petitioner's release from detention. Doc. 4 at 9.[2] In support of the Motion, Petitioner argues he is likely to succeed on the merits of his Petition because the presumptively reasonably six-month period expired on November 15, 2025, and he remains detained over three months later. *Id.* at 5. Petitioner asserts that he cannot be removed to Turkey, and no third country

---

[2] Page citations are to the pages in the electronic court filing docket number and do not necessarily correspond with the page number of the motion itself.

has agreed to accept him. *Id.* As such, his removal is not reasonably foreseeable. *Id.* Petitioner also contends that the "loss of physical liberty constitutes irreparable harm as a matter of law." *Id.* Finally, he argues that the balance of the equities and the public interest weigh in favor of granting the TRO. *Id.* at 6.

The next day, the Court ordered Respondents to submit a Response, should they wish to do so, on or before February 23, 2026. Doc. 7. No such Response was submitted before that deadline.[3]

## II.
## FACTUAL FINDINGS

Petitioner supported his Motion for TRO with the facts and exhibits provided in his verified Petition and the Motion itself. *See* Docs. 3, 4. Respondents did not provide any information to dispute the factual allegations contained in the Petition and Motion. Accordingly, at this stage of the litigation, based on the facts provided in Petitioner's verified Petition and Motion for TRO, the Court makes the following initial findings of fact concerning Petitioner's detention:

1. Petitioner Tayfun Caliskan is a native and citizen of Turkey. Doc. 3-2 at 1. He arrived in the United States at or near Tecate, California on or about May 8, 2024. *Id.* He was issued a Notice to Appear charging him as removable under the INA on May 9, 2024. *Id.*

2. On May 15, 2025, the IJ assigned to Petitioner's case found him inadmissible but granted withholding of removal to Turkey. Doc. 3-3 at 3. Petitioner was ordered removed to any country but Turkey. *Id.* at 5. Both parties waived appeal at the hearing. *Id.* at 6.

---

[3] Counsel for Dora Castro, Warden of Otero County Processing Center, did submit a Notice of Compliance with the Court's Order, indicating that Respondent Castro takes no position separate from the federal Respondents. *See* Doc. 10. To date, the federal Respondents have not indicated their position.

3. The IJ memorialized their decision in writing on September 3, 2025. *See generally id.* That opinion states that the oral decision entered on May 15, 2025, is the official opinion, and the written opinion is a summary issued for the convenience of the parties. *Id.* at 3.

4. Petitioner has been detained continuously since May 15, 2025. Doc. 3 at ¶ 33.

5. To date, no third country has agreed to accept Petitioner. *Id.* at ¶ 37.

## III.
## LEGAL STANDARDS

### A. Temporary Restraining Order

To obtain a temporary restraining order, a petitioner "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief," and that the balance of equities and public interest weigh in his favor. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A petitioner seeking a temporary restraining order must demonstrate that "*all four* of the equitable factors weigh in his favor." *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013). "The likelihood-of-success and irreparable-harm factors are 'the most critical.'" *People's Trust Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F.Supp.3d 1129, 1139 (10th Cir. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Regarding the irreparable harm factor, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016) (quotation marks and citations omitted). The balance-of-equities and public-interest factors "merge" where, like here, the Government is the opposing party. *Nken*, 556 U.S. at 435.

### B. Post-Removal Detention

A removable noncitizen may be detained during his removal proceedings and after he receives an order of removal that becomes final. *See* 8 U.S.C. §§ 1225, 1226, 1231. Section 1231

4

governs the detention of noncitizens "during" and "beyond" the "removal period." 8 U.S.C. § 1231(a)(2)-(6). In general, when a noncitizen is ordered removed, the Attorney General shall remove them within 90 days, known as the "removal period." § 1231(a)(1)(A). The "removal period" begins once a noncitizen's removal order "becomes administratively final," § 1231(a)(1)(B), meaning the order has been affirmed by the BIA or the time for seeking review has expired, 8 U.S.C. § 1101(a)(47)(B). During the removal period, ICE "shall detain the [noncitizen]" as it conducts the removal. § 1231(a)(1)-(2). If ICE does not remove the noncitizen within the 90-day removal period, the noncitizen "shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). Noncitizens subject to certain INA provisions or determined to be a risk to the community or unlikely to comply with the order of removal "*may* be detained beyond the removal period[.]" § 1231(a)(6) (emphasis added).

However, the Supreme Court acknowledged in *Zadvydas v. Davis* that "[a] statute permitting indefinite detention of a [noncitizen] would raise a serious constitutional problem." 533 U.S. at 690. As such, the Court construed § 1231(a)(6) to limit the Attorney General's discretion to detain a noncitizen beyond the removal period to only that period of time "reasonably necessary to secure removal." *Id.* at 699. "Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700.

Six months of post-removal order detention was held to be "presumptively reasonable." *Id.* at 701. After this point, once a noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* This presumption does not mean that every noncitizen must be released if not removed after six months in detention. *Id.* Rather, a

5

noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

## IV.
## DISCUSSION

**A. Petitioner is Likely to Succeed on the Merits.**

Petitioner is likely to succeed on the merits of his claim that his ongoing detention violates § 1231, as construed by *Zadvydas*, and the due process clause.

1. <u>Petitioner has remained detained beyond the presumptively reasonable six-month period.</u>

As an initial matter, Petitioner's removal order became final on May 15, 2025. While typically an order is not final until the conclusion of an appeal, or the expiration of the deadline by which to appeal, both parties waived their right to appeal at the May 15 hearing. Doc. 3-3 at 6. Accordingly, Petitioner's removal period began on May 15, 2025.[4]

Petitioner was not removed within the 90-day removal period, and he remains detained more than nine months after his removal order became final. According to the Petition and Motion for TRO, Petitioner was previously released while his removal proceedings were pending. Doc. 3 at ¶¶ 26-27; Doc. 4 at 1-2. After he was ordered removed on May 15, 2025, ICE detained him. Doc. 3 at ¶ 33; Doc. 4 at 2. He has remained in custody since then. *Id.* As of today, Petitioner has

---

[4] It is true that the Immigration Judge issued an "Amended Order" on September 3, 2025. However, that opinion makes clear that it is a summary of the oral decision entered on May 15, 2025, which remains the official opinion. Doc. 6-6 at 3. Even if the removal period began on September 3, 2025, Petitioner has been detained 5 months and 22 days since that date, about one week shy of the six-month mark where his detention would no longer be afforded a presumption of reasonableness. And some courts have found this presumption to be rebuttable when a noncitizen can demonstrate before the six-month mark that there is no significant likelihood of removal in the reasonably foreseeable future. *See, e.g., Ziaei v. Ortiz et al.*, 1:25-cv-01111-MLG-KBM (D.N.M. Dec. 15, 2025) (Garcia, J.); *Cesar v. Achim*, 542 F.Supp.2d 897, 903 (E.D. Wis. 2008); *Munoz-Saucedo v. Pittman*, 789 F.Supp.3d 387, 395 (D.N.J. 2025); *Medina v. Noem*, 794 F.Supp.3d 365, 375 (D. Md. 2025); *Ali v. DHS*, 451 F.Supp.3d 703, 708 (S.D. Tex. 2020).

been detained 287 days—more than 100 days over the presumptively reasonable six months (180 days).

2. Petitioner has met his burden under *Zadvydas*; the Government has not.

After the six-month point of detention, a Petitioner seeking relief bears the initial burden of showing there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Once a noncitizen meets this burden, the burden shifts to the Government to "respond with evidence sufficient to rebut that showing." *Id.*

Petitioner has provided the Court with good reason to believe his removal is not significantly likely in the reasonably foreseeable future. Petitioner was granted withholding of removal, which legally prohibits removal to his home country of Turkey. Doc. 4 at 5; *see also* Doc. 3 at ¶ 56. Nine months since his removal order became final, Petitioner has been detained and the Government has failed to accomplish removal to a third country. According to Petitioner, upon information and belief, no third country has agreed to accept Petitioner to date. Doc. 3 at ¶ 57; Doc. 4 at 5. At this stage of the litigation, the Court finds a significant likelihood that Petitioner will succeed in showing his removal is not reasonably foreseeable.

The Government has provided no evidence to rebut Petitioner's showing or suggest that removal is significantly likely in the reasonably foreseeable future. The Court recognizes that the matter before it is an emergency motion and that Respondents have not yet submitted a Response to the underlying Habeas Petition.[5] However, federal Respondents were provided an opportunity

---

[5] Under the Court's Order to Show Cause, Respondents' deadline to do so is March 3, 2026. *See* Doc. 8.

to respond to Petitioner's motion, *see* Doc. 7, and they did not do so. Accordingly, the Government has failed to meet its burden of showing that Petitioner's continued detention remains reasonable.

Petitioner has therefore shown he is likely to succeed on the merits of his claim that his detention violates § 1231 of the INA. Moreover, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects. *Zadvydas v. Davis*, 522 U.S. at 690. The *Zadvydas* Court construed § 1231 the way it did after recognizing that a "serious constitutional problem" would arise if the statute permitted indefinite detention of noncitizens. *Id.* Given that this Petitioner has remained detained more than three months *beyond* the presumptively reasonable six-month period established by *Zadvydas*, without any evidence that his removal is reasonably foreseeable, he has also shown a likelihood of success on his claim that his continued detention violates his due process rights.

**B. Petitioner Will Face Irreparable Harm Without Injunctive Relief.**

The Court next finds that Petitioner has demonstrated that his detention has caused and will continue to cause irreparable harm. It is well-established that "the infringement of a constitutional right" is enough to show irreparable harm. *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805 (10th Cir. 2019). Having found a substantial likelihood of success on the merits of Petitioner's due process claim, "no further showing of irreparable injury" is necessary. *Id.*

**C. The Balance of Equities and Public Interest Weigh in Petitioner's Favor.**

When the Government is the party opposing the temporary restraining order, the balance of equities and public interest merge. *Nken*, 556 U.S. at 435. The Court finds that the balance of equities and public interest weigh in Petitioner's favor. Respondents' interest in detaining Petitioner is minimal where removal is not reasonably foreseeable, and it pales in comparison to

the harm that Petitioner faces in what has effectively become indefinite—and unconstitutional—detention. In addition, "there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." Doc. 4 at 6 (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). The public interest therefore favors relief here, where the Government has exceeded the constitutional limits the Supreme Court read into the INA's post-removal detention framework.

## V.
## CONCLUSION

In conclusion, the Court finds that the requirements for issuing a temporary restraining order are met. Accordingly, **IT IS ORDERED** that:

1. Petitioner's request for a temporary restraining order is **GRANTED**;

2. Respondents are **ORDERED** to release Petitioner within twenty-four hours of this Order;

3. Respondents are **RESTRAINED** from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral arbiter, that Petitioner's removal is reasonably foreseeable and that detention is necessary to bring about his removal; and

4. This order, for good cause shown, shall remain in effect until resolution of the merits of the habeas petition. *See* FED. R. CIV. P. 65(b)(2).

**IT IS SO ORDERED.**

_____
**HONORABLE DAVID HERRERA URIAS**
**UNITED STATES DISTRICT JUDGE**